Jordon R. Harlan, Esq. (CA #273978)
**HARLAN HILLIER DIGIACCO LLP**
701 Island Avenue, Second Floor
San Diego, CA 92101
Telephone: (619) 330-5120
Facsimile: (619) 839-3895
Email: jordon@hhdlaw.com

Adam J. Kress, Esq. (MN #0397289)
*Pro Hac Vice to be filed*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
Email: akress@johnsonbecker.com

***Attorneys for Plaintiff, Gary Lee***

UNITED STATES DISTRICT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY LEE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>IGLOO PRODUCTS, CORP.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. Strict Products Liability<br>2. Negligent Products Liability<br>3. Breach of Implied Warranty of Merchantability<br>4. Punitive Damages |

Plaintiff, **GARY LEE ("Plaintiff")**, by and through his undersigned counsel, **JOHNSON BECKER, PLLC** and **HARLAN HILLIER DIGIACCO LLP**, hereby submit the following Complaint and Demand for Jury Trial against Defendant **IGLOO PRODUCTS CORP. ("Defendant" or "Igloo")**, and allege the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1. Defendant designs, manufactures, markets, imports, distributes and sells consumer products, including the subject "Latitude 90 Roller Cooler." (referred to hereafter as "Cooler(s)").

2. On or about June 3, 2023, Plaintiff was taking the cooler out of his truck bed when the handle pinched the fingers of his left, dominant hand against the body of the cooler. As a result of the incident, Plaintiff continues to have numbness and pain in his left index finger, which is attributable to nerve damage.

3. On February 13, 2025, the Consumer Products Safety Commission ("CPSC") announced a recall of more than 1,000,000 of Defendant's Coolers, which includes the subject Cooler, after receiving "**12 reports of fingertip injuries, including fingertip amputations, bone fractures, and lacerations**" as a result of the tow handle pinching consumers' fingertips against the Coolers. [1]

4. Defendant knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell their Coolers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to timely recall the dangerously defective Coolers regardless of the risk of significant injuries to Plaintiff and consumers like him.

5. Defendant ignored and/or concealed their knowledge of these defects in their Coolers from the Plaintiff in this case, as well as the public in general, in order to continue generating a profit from the sale of said Coolers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and consumers like him.

6. As a direct and proximate result of Defendant's conduct, the Plaintiff in

---

[1] *See* the CPSC Recall notice from February 13, 2025 (https://www.cpsc.gov/Recalls/2025/Igloo-Recalls-More-Than-One-Million-90-Quart-Rolling-Coolers-Due-to-Fingertip-Amputation-and-Crushing-Hazards ), a copy of which is attached hereto as Exhibit A.

this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

**PLAINTIFF GARY LEE**

7. Plaintiff is a resident and citizen of the city of Sacramento, County of Sacramento, State of California.

8. On or about June 3, 2023, Plaintiff suffered serious and substantial injuries as the direct and proximate result of his dominant left hand being crushed between the tow handle and body of the subject Cooler.

**IGLOO PRODUCTS, CORP.**

9. Defendant Igloo Products Corp. is a Delaware Corporation with its principal place of business located at 777 Igloo Rd, Katy, TX 77494. At all times relevant, Defendant Igloo Products Corp. substantially participated in the distribution, design, manufacture, and sale of the subject Cooler, which caused Plaintiff's injuries and damages.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1332 all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

**FACTUAL BACKGROUND**

12. Defendant designs, manufactures, markets, imports, distributes and sells consumer products, including the subject Cooler at issue in this case.

13. On or about June 3, 2023, Plaintiff was taking the cooler out of his truck bed when the handle pinched the fingers of his left, dominant hand against the body of the cooler. As a result of the incident, Plaintiff continues to have numbness and pain

in his left index finger, which is attributable to nerve damage.

14. On February 13, 2025, the Consumer Products Safety Commission ("CPSC") announced a recall of more than 1,000,000 of Defendant's Coolers, which includes the subject Cooler, after receiving "**12 reports of fingertip injuries, including fingertip amputations, bone fractures, and lacerations**" as a result of the tow handle pinching consumers' fingertips against the Coolers. [2]

15. Defendant knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell their Coolers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to timely recall the dangerously defective Coolers regardless of the risk of significant injuries to Plaintiff and consumers like him.

16. By reason of the forgoing acts or omissions, the above-named Plaintiff and/or his family purchased their Cooler with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for their intended, foreseeable use.

17. However, the aforementioned Cooler was defectively designed by Defendant, placing the Plaintiff, his family, and similar consumers in danger while using the Coolers.

18. Defendant's Coolers possess defects that make them unreasonably dangerous for their intended use by consumers because of the risks of crush injuries described herein.

19. Economic, safer alternative designs were available that could have prevented the towing handle from crushing a consumer's fingertips against it.

20. As a direct and proximate result of Defendant's intentional concealment of such defects, it's failure to warn consumers of such defects, its failure to timely remove a product with such defects from the stream of commerce, and its negligent

[2] *Id.*

design of such products, Plaintiff used an unreasonably dangerous Cooler, which resulted in significant and painful bodily injuries

21. Consequently, the Plaintiff in this case seeks damages resulting from the use of Defendant's Cooler as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**

**STRICT PRODUCTS LIABILITY**

PLAINTIFF, FOR A FIRST CAUSE OF ACTION AGAINST IGLOO PRODUCTIONS, CORP., ALLEGES AS FOLLOWS:

22. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

23. At the time of Plaintiff's injuries, Defendant's Coolers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

24. Defendant's Coolers were in the same or substantially similar condition as when they left the possession of the Defendant.

25. Plaintiff did not misuse or materially alter the Cooler.

26. The Coolers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

27. Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the Coolers safe. Specifically:

a. The Coolers designed, manufactured, sold, and supplied by Defendant were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;
b. The seriousness of the potential injuries resulting from the product drastically outweighs any benefit that could be derived from their normal, intended use;

c. Defendant failed to properly market, design, manufacture, distribute, supply, and sell the Coolers, despite having extensive knowledge that the aforementioned injuries could and did occur;

d. Defendant failed to warn and place adequate warnings and instructions on the Coolers;

e. The pressure designed, manufactured, sold, and supplied by Defendant were not compliant with industry standards;

f. Defendant failed to adequately test the Coolers; and

g. Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff' injuries and damages.

28. Defendant's actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

29. Defendant's conduct, as described above, was extreme and outrageous. Defendant risked the safety and well-being of the consumers and users of their Coolers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendant made a conscious decision not to redesign, warn or inform the unsuspecting consuming public. Defendant's outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory and punitive damages, according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper.

## SECOND CAUSE OF ACTION

## NEGLIGENT PRODUCTS LIABILITY

PLAINTIFF, FOR A SECOND CAUSE OF ACTION AGAINST IGLOO PRODUCTIONS, CORP., ALLEGES AS FOLLOWS:

30. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

31. Defendant had a duty of reasonable care to design, manufacture, market, and sell non-defective Coolers that are reasonably safe for their intended uses by consumers, such as Plaintiff and his family.

32. Defendant failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of their Coolers in that Defendant knew or should have known that said Coolers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

33. Defendant was negligent in the design, manufacture, advertising, warning, marketing and sale of their Coolers in that, among other things, it:

a. Failed to use due care in designing and manufacturing the Coolers to avoid the aforementioned risks to individuals;
b. Failed to adequately test the Coolers subject to the applicable industry standards;
c. Placed an unsafe product into the stream of commerce;
d. Aggressively over-promoted and marketed their Coolers through television, social media, and other advertising outlets; and
e. Were otherwise careless or negligent.

34. Despite the fact that Defendant knew or should have known that consumers were able to crush their hand between the cooler and the towing handle, Defendant continued to market their Coolers to the general public.

35. Defendant's conduct, as described above, was extreme and outrageous. Defendant risked the safety and well-being of the consumers and users of their Coolers, including the Plaintiff to this action, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting consuming public. Defendant's outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for

compensatory and punitive damages, according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper.

**THIRD CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

PLAINTIFF, FOR A THIRD CAUSE OF ACTION AGAINST IGLOO PRODUCTIONS, CORP., ALLEGES AS FOLLOWS:

36. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

37. At the time Defendant marketed, distributed, and sold its Coolers to the Plaintiff in this case, Defendant warranted that its Coolers were merchantable and fit for the ordinary purposes for which they were intended.

38. Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

39. Defendant's Coolers were not merchantable and fit for its ordinary purpose, because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

40. Plaintiff in this case used the Cooler with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use.

41. Defendant's breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory and punitive damages, according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper.

///

///

///

///

**FOURTH CAUSE OF ACTION**

**PUNITIVE DAMAGES**

PLAINTIFF, FOR A FOURTH CAUSE OF ACTION AGAINST IGLOO PRODUCTIONS, CORP., ALLEGES AS FOLLOWS:

42. Plaintiff incorporates by reference each of the allegations set forth in this Complaint as though fully set forth herein.

43. The acts, conduct, and omissions of the Defendant, as alleged throughout this Complaint, were willful and malicious. It is unconscionable and outrageous that Defendant would risk the health, safety, and well-being of consumers, including the Plaintiff in this case. Despite its knowledge that consumers were sustained crush injuries, Defendant made conscious decisions not to redesign, despite the existence of an economically feasible, safer alternative design, and not to adequately label, warn or inform the unsuspecting consuming public about the dangers associated with the use of their Coolers.

44. Defendant's outrageous conduct rises to the level that Plaintiff should be awarded punitive damages to deter Defendant from this type of outrageous conduct in the future, as well as to discourage others from placing profit above the safety of consumers in the United States of America.

45. Prior to and during the manufacturing, sale, and distribution of its Coolers, Defendant knew that said Coolers were in a defective condition as previously described herein and knew that those who purchased and used their Coolers, including Plaintiff, could experience severe physical, mental, and emotional injuries.

46. Further, Defendant knew that its Coolers presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as such, Defendant unreasonably subjected consumers of said Coolers to risk of serious and permanent injury from their use.

47. Despite its knowledge, Defendant, for the purpose of enhancing its profit, knowingly and deliberately failed to remedy the known defects in their Coolers, and

failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in them. Defendant intentionally proceeded with the manufacturing, sale, distribution and marketing of their Coolers knowing these actions would expose consumers, such as the Plaintiff, to serious danger in order to advance their pecuniary interest and monetary profit.

48. Defendant's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant with willful and conscious disregard for the safety of the Plaintiff, his family, and consumers like them, entitling the Plaintiff to punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for punitive damages, together with interest, costs of suit, and all such other relief as the Court deems proper.

## INJURIES & DAMAGES

49. As a direct and proximate result of Defendant's negligence and wrongful misconduct as described herein, Plaintiff has suffered and will continue to suffer physical and emotional injuries and damages including past, present, and future physical and emotional pain and suffering as a result of the incident. Plaintiff is entitled to recover damages from Defendant for these injuries in an amount which shall be proven at trial.

50. As a direct and proximate result of Defendant's negligence and wrongful misconduct, as set forth herein, Plaintiff has incurred and will continue to incur the loss of full enjoyment of life and disfigurement as a result of the incident. Plaintiff is entitled to recover damages for loss of the full enjoyment of life and disfigurement from Defendant in an amount to be proven at trial.

51. As a direct and proximate cause of Defendant's negligence and wrongful misconduct, as set forth herein, Plaintiff has and will continue to incur expenses for medical care and treatment, as well as other expenses, as a result of the crush injury he suffered as a result of the incident. Plaintiff is entitled to recover damages from

Defendant for his past, present and future medical and other expenses in an amount which shall be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

A. That Plaintiff has a trial by jury on all of the claims and issues;

B. That judgment be entered in favor of the Plaintiff and against Defendant on all of the aforementioned claims and issues;

C. That Plaintiff recover all damages against Defendant, general damages and special damages, including economic, non-economic and punitive damages, to compensate the Plaintiff for his injuries and suffering sustained because of the use of the Defendant's defective Cooler;

D. That all costs be taxed against Defendant;

E. That prejudgment interest be awarded according to proof; and

///

///

///

///

///

///

///

F. That this Court awards any other relief that it may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Dated: June 2, 2025

**HARLAN HILLIER DIGIACCO LLP**

*/s/ Jordon R. Harlan, Esq.*
Jordon R. Harlan, Esq. (CA #273978)
701 Island Avenue, Second Floor
San Diego, CA 92101
Telephone: (619) 330-5120
Facsimile: (619) 839-3895
Email: jordon@hhdlaw.com

*In association with*:

**JOHNSON BECKER, PLLC**

Adam J. Kress, Esq. (MN #0397289)
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Telephone: (612) 436-1800
Fax: (612) 436-1801
Email: akress@johnsonbecker.com

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all the claims asserted in this Complaint so triable.

Dated: June 2, 2025

**HARLAN HILLIER DIGIACCO LLP**

*/s/ Jordon R. Harlan, Esq.*
Jordon R. Harlan, Esq. (CA #273978)