UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GARY LEE, an individual,

        Plaintiff,

   v.

IGLOO PRODUCTS CORP.,

        Defendant.

No. 2:25-cv-01526-JAM-CSK

**ORDER GRANTING MOTION TO DISMISS**

Plaintiff alleges his finger was pinched and severely injured by an Igloo-brand cooler while removing the cooler from the bed of his truck.  Plaintiff theorizes that the accident was caused by an alleged design defect in the cooler and/or by Igloo's failure to warn of the risk of injury and asserts claims for strict products liability and negligence as a result. Defendant has moved to dismiss Plaintiff's claims, arguing they are "long on generic conclusions" while being "woefully short on supporting facts."

As discussed further below, the Court agrees that Plaintiff's claims are insufficiently pled and dismisses Plaintiff's claims with leave to amend.

1

## I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Defendant Igloo Products Corp. designs and manufactures numerous products intended to cool food and beverages, including a "Latitude 90 Roller Cooler" (the "Cooler").  First Am. Compl. ("FAC") ¶ 1, ECF No. 22.  Plaintiff Gary Lee alleges that on or about June 3, 2023, he was taking the Cooler out of his truck bed when the tow handle pinched the fingers of his left hand against the body of the Cooler (the "Accident").  Id. ¶ 14.  Plaintiff alleges that the Accident occurred as a result of the defective design of the Cooler, which allowed Plaintiff's hand to be pinched between the tow handle and Cooler during the normal, foreseeable use of the product.  Id. ¶ 15.  Plaintiff alleges that he continues to have numbness and pain in this left index finger, which is attributable to nerve damage.  Id. ¶ 16.

Plaintiff also alleges that, on November 13, 2025, the Consumer Products Safety Commission ("CPSC") announced a recall of more than 1,000,000 of Defendant's coolers, which included the subject Cooler, after receiving "12 reports of fingertip injuries, including fingertip amputations, bone fractures, and lacerations" as a result of the tow handle pinching consumers' fingertips against the Coolers.  Id. ¶ 17.  Plaintiff alleges this indicates "Defendant knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell their Coolers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to timely recall the dangerously defective Coolers regardless of the risk of significant injuries to Plaintiff and consumers like him."  Id. ¶ 18.

Plaintiff filed his operative First Amended Complaint on September 22, 2025, alleging four causes of action for (1) Strict Products Liability – Design Defect; (2) Strict Products Liability – Failure to Warn; (3) Negligence/Negligent Products Liability – Negligent Design Defect; and (4) Negligence/Negligent Products Liability – Negligent Failure to Warn.  Id. ¶¶ 25-60.  In response, Defendant filed the pending Motion to Dismiss (ECF No. 23), Plaintiff filed a timely Opposition (ECF No. 24), and Defendant filed a Reply (ECF No. 25).  The matter was submitted without oral argument pursuant to Local Rule 230(g).  ECF No. 27.

## II.  LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party."  Steinle v. City & Cnty. of San Francisco, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995)).  That said, if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations."

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible.  Iqbal, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone suffice.  Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

In granting a motion to dismiss, a court must also decide whether to grant leave to amend.  Leave to amend should be freely given where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

### III. OPINION

A.   Plaintiff Has Inadequately Pled His Strict Liability
        and Negligence Design Defect Claims (Counts I and III)

Plaintiff's First and Third Causes of Action are predicated on the existence of a design defect in the Cooler.  FAC ¶¶ 26-36, 45-50.  Defendant argues that both causes of action fail at the outset because Plaintiff does not adequately identify which design defect theory he intends to plead, (1) the consumer expectations test or (2) the risk-benefit test.  Mot. Dismiss at 3-4, ECF No. 23.  Defendant also argues that Plaintiff has failed to adequately plead either design defect theory, as he neither describes how the Cooler failed to meet the minimum safety

expectations of an ordinary consumer as required by the consumer expectations test, nor explains how the particular design defect of the Cooler caused him harm as required by the risk-benefit test.  Id. at 4-6.  Finally, Defendant contends Plaintiff inadequately pleads causation.  Id. at 6-8.

The Court finds Plaintiff fails to plausibly plead a strict liability design defect claim.  California recognizes strict liability for three types of product defects – manufacturing defects, design defects, and warning defects (inadequate warnings or failure to warn).  Anderson v. Owens-Corning Fiberglas Co., 53 Cal. 3d 987, 995 (1991).  Under the "design defect" theory, a design may be defective in one of two ways.  Soule v. Gen. Motors Corp., 8 Cal. 4th 548, 566-67 (1994).  First, under the "consumer expectations test," a product's design is defective if it has failed to perform as safely as its ordinary consumers would expect when used in an intended or reasonably foreseeable manner.  Barker v. Lull Eng'g Co., 20 Cal. 3d 413, 430 (1978).  Second, under the "risk-benefit test," a product's design is defective if the design embodies "excessive preventable danger," that is, the risk of danger inherent in the design outweighs the benefits of such design.  Id.  "To meet the strictures of Twombly and Iqbal, Plaintiffs should identify which design defect theory is being utilized and allege facts to support that theory."  In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. and Prods. Liab. Litig., 754 F. Supp. 2d 1208, 1220 (2010).  A bare allegation that the product suffered from a "design defect" is an insufficient legal conclusion.  Lucas v. City of Visalia, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010).

Here, as a threshold matter, Plaintiff fails to adequately identify which design defect theory he wishes to utilize. Although Plaintiff's allegations contain vague language akin to both the consumer expectations and risk-benefit test such as "ordinary consumer" and "purported benefits," see FAC ¶ 33, he fails to explicitly identify which test(s) he intends to plead and which allegations support each theory.

Moreover, Plaintiff's design defect allegations are generally couched in conclusory language. For example, "[u]nder the consumer expectations test, [a plaintiff] should describe how the [product] failed to meet the minimum safety expectations of an ordinary consumer of [the product]." Lucas, 726 F. Supp. at 1155 (internal quotations omitted) (emphasis in original). Here, Plaintiff merely alleges "the Igloo cooler contained a design defect," and "[d]ue to its defective design, the cooler failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." FAC ¶¶ 29, 33. These allegations plainly fail to describe how, under the circumstances Plaintiff was handling the Cooler, the Cooler failed to meet the minimum safety expectations of an ordinary consumer. Moreover, "[u]nder the risk-benefits test, [a plaintiff] should allege that the risks of the design outweigh the benefits, and then explain how the particular design of the [product] caused [plaintiffs] harm." Lucas, 726 F. Supp. at 1155 (internal quotations omitted) (emphasis in original). Here, Plaintiff alleges the Accident "occurred as a result of the defective design of the subject cooler, which allowed Plaintiff's hand to [be] pinched between the tow handle and cooler during the

6

normal, foreseeable use of the product." FAC ¶ 15. Missing from these allegations is any identification of which aspect of the Cooler's design made it defective. As such, the Court finds there are insufficient facts to support a design defect claim. Cf., e.g., In re Toyota, 754 F. Supp. 2d at 1220-21 (denying motion to dismiss design defect claim because plaintiff identified three design defects and described how they made certain vehicles unable to perform as an ordinary consumer would expect and in a way that the risks were not outweighed by the benefits). Plaintiff's lack of specificity about which allegations pertain to which theory of strict products liability is fatal to the survival of this claim. Thus, Plaintiff's strict liability design defect claim is not "plausible on its face." Twombly, 550 U.S. at 570.

Plaintiff also fails to plead a negligent design defect claim. California permits a negligent products liability claim predicated upon an alleged design defect, manufacturing defect, or failure to warn. Trejo v. Johnson & Johnson, 13 Cal. App. 5th 110, 125 (2017). To establish negligent design or manufacturing, a plaintiff must prove (1) a defect caused injury, and (2) the defect was due to negligence of the defendant. Id. With respect to an alleged design defect, the plaintiff "must identify what aspect of [the product] makes it defective." Marroquin v. Pfizer, Inc., 367 F. Supp. 3d 1152, 1164 (E.D. Cal. 2019). As explained above, Plaintiff fails to adequately allege which aspect of the Cooler makes it defective.

Accordingly, the Court dismisses Plaintiff's First and Third Causes of Action with leave to amend.

B.    Plaintiff Has Inadequately Pled His Strict Liability
and Negligence Failure to Warn Claims (Counts II and
IV)

Plaintiff's Second and Fourth Causes of Action are premised on Defendant's failure to warn of the Cooler's hazardous tow handle.  FAC ¶¶ 38-43, 52-60.  Defendant argues that these claims fail because Plaintiff has not plausibly pled that Defendant knew or should have known of the hazard prior to the Accident.  Mot. Dismiss at 8-9.

The Court agrees.  A strict liability failure to warn claim under California law requires a plaintiff to prove the "defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution."  Anderson, 53 Cal. 3d at 1002. Whether the risk was known or knowable is assessed at the time the product was distributed.  Johnson v. Am. Standard, Inc., 43 Cal. 4th 56, 64 (2008) ("Typically, under California law, we hold manufacturers strictly liable for injuries caused by their failure to warn of dangers that were known to the scientific community at the time they manufactured and distributed their product."); Brown v. Superior Court, 44 Cal. 3d 1049, 1060 n.8 (1988) ("[A] manufacturer's knowledge should be measured at the time a [product] is distributed because it is at this point that the manufacturer relinquishes control of the product."). Similarly, a negligent failure to warn claim under California law requires a plaintiff to establish "a manufacturer or distributor did not warn of a particular risk for reasons that fell below the

8

acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about." Anderson, 53 Cal. 3d at 1002.  In either case, strict liability or negligence, the plaintiff must show the defendant had some level of awareness — i.e., the defendant knew, or should have known — of a "particular risk."

Here, Plaintiff has failed to plausibly allege that Defendant knew or should have known of the alleged Cooler defect at the time of the Accident.  At most, Plaintiff alleges that Defendant should have known because the CPSC recalled more than 1,000,000 of Defendant's coolers, including the subject Cooler, on "November 13, 2025"[sic], and prior to the recall, Defendant had received multiple reports of injuries involving the same or similar cooler model.  FAC ¶¶ 17, 57. However, Plaintiff fails to allege when Defendant received these complaints.  As the Ninth Circuit has observed, courts often "reject[] undated customer complaints offered as a factual basis for a manufacturer's knowledge of a defect because they provide no indication whether the manufacturer was aware of the defect at the time of sale." Wilson v. Hewlitt-Packard Co., 668 F. 3d 1141, 1147-48 (9th Cir. 2012) (emphasis in original).  Apart from these complaints, Plaintiff offers no other reason why Defendant "knew or should have known" of the alleged defect before the Accident.

Thus, the Court dismisses Plaintiff's Second and Fourth Causes of Action with leave to amend.

## IV.  ORDER

For the reasons above, Defendant's Motion to Dismiss (ECF No. 23) is GRANTED.  Plaintiff's First through Fourth Causes of

Action are DISMISSED WITH LEAVE TO AMEND.  If Plaintiff elects to file an amended complaint, he must do so within twenty (20) days of this Order.  Defendant shall file their response to the amended complaint within twenty (20) days thereafter.

IT IS SO ORDERED.

Dated: February 20, 2026

_____
JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE